J. W. WELTON AND WIFE, RESPONDENTS, v. ADAMS &
                    CO., APPELLANTS.

[1] NEGOTIABLE INSTRUMENTS, CERTIFICATE OF DEPOSIT.—A certificate of deposit is
a negotiable security, and, as far as negotiability is concerned, must be placed on
the same footing as promissory notes.

CERTIFICATE OF DEPOSIT—ACTION ON.—Where it is alleged that a negotiable
security, as, for example, a banker's certificate of deposit, has been lost or de-
stroyed, the maker of it has a right to require indemnity against all future claims
under it, before its payment can be enforced by law.

[2] LOST INSTRUMENT—INDEMNITY REQUIRED BEFORE ACTION.—The best rule is, to
require indemnity in all cases, whether the bill or note has been lost or de-
stroyed, notwithstanding its occasional hardship.

APPEAL from the Sixth Judicial District.

In this case, Harriet Williamson, previous to her
intermar- * riage with J. S. Welton, one of the plain-    [38]
tiffs below, deposited with Adams & Co., bankers, of
the City of San Francisco, the sum of $4,850, for which they
issued to her a certificate of deposit, as follows, viz:

"No. 6155.
    "Express and Banking Office, Montgomery street,
            "Adams & Co., San Francisco, August 28th, 1852.
"Harriet Williamson deposited with us forty-eight hun-
dred and fifty dollars, payable at our office, in San Francisco,
on return of this certificate, with her indorsement herein.
    "$4,850.                (Signed)        ADAMS & Co."

On the 15th of October, 1852, the house in which Harriet
Williamson lived was destroyed by fire, together with its
contents, including, as alleged by her, the certificate of de-
posit.   Notice of the destruction of the certificate was im-
mediately given to Adams & Co., and payment demanded by
her, both before and after her intermarriage with Welton,

[1] Approved in McMillan v. Richards, 9 Cal. 418; Mills v. Barney, 22 Cal. 248;
Brummagim v. Tallant, 29 Cal. 505; Poorman v. Mills, 35 Cal. 120.  See Coye v.
Palmer, 16 Cal. 159.
[2] Approved in Price v. Dunlap, 5 Cal. 484; Randolph v. Harris, 28 Cal. 564.  See
Castro v. Wetmore, 16 Cal. 379.

which occurred on the 28th of January, 1853. Adams & Co. refused to pay the certificate, without its production, or a bond of indemnity. Welton and wife refusing to give indemnity, instituted suit in the District Court of Sacramento, for the recovery of the money, alleging these facts, and their inability to give security. The defendants, in their answer, admitted the deposit, the issuing of the certificate, and their refusal to pay without indemnity, and said that no indemnity was offered or tendered; that they had always been, and were still, willing to pay the said sum of money, upon the return of said certificate, with the indorsement thereon, as required by its terms; or even without such return and indorsement, upon receiving a reasonable and sufficient indemnity against any subsequent demand for the said amount of money.

The District Court, sitting as a jury, found that the certificate had been destroyed, as alleged, and, therefore, rendered judgment for plaintiffs for the amount, with costs of suit. The defendants appealed, and, at the July term, 1853, the judgment of the Court below was affirmed. The Court, however, directed a re-argument.

[39]     \* *J. Neely Johnson,* for Appellants.

The Court below erred in refusing to compel the respondents to execute a bond of indemnity. (Story on Prom. Notes, § 107, 109, 445, and notes 446, 448, 450; 14 Com. Law Rep. 90; 8 Ib. 431; 3 Wend. 344.) This is an equitable proceeding, and the Court should have decreed indemnity, as a condition precedent. (3 Com. Law R. 208; 16 Pick. 315; 3 Stew. Ala. 31; 10 Johns. 103; *Pinkham* v. *Tackington,* 2 Hill, 482.) Certificates of deposit are, by statute, made negotiable and assignable. (Stat. of 1850, chap. 10, § 1; Ib. chap. 121, § 1–2; Watts & S. 227.) The Court below should have decreed costs against the plaintiffs, as a condition of the judgment.

*Latham & Aldrich,* for Respondents.

The destruction of the instrument having been proved, the danger of future claim is removed, and no indemnity can be required. ( 10 Johns. 103; 13 Eng. Com. Law R. 430; Chitty on Bills, pp. 268, 394; 3 Stew. Ala. 31; 4 Scam. 334.) A certificate of deposit is not negotiable in the sense in which it is used in the cases where indemnity has been required, or the party has been obliged to go into equity for relief. There is no liability of an indorser as such. (6 Watts & S. 227.) Even if negotiable, it must affirmatively appear that the certificate, when lost or destroyed, was in such a condition that, in the hands of an innocent holder, a recovery could be had, after its payment. ( 10 Johns. 104; 3 Stew. 31.) The danger of a recovery against the maker is too remote. If the action was at common law, plaintiffs were entitled to costs; if in equity, the granting of costs was in the discretion of the Court.

Mr. Justice HEYDENFELDT delivered the opinion of the Court. Mr. Ch. J. MURRAY concurred.

When this case was first argued, I came to the conclusion that a certificate of deposit was a non-negotiable security, and, upon that hypothesis, it was very clear that, like all other unnegotiable paper, whoever claims it, must do so in the name of the payee, and, consequently, the defense of "payment to the *depositor," would be valid [40] against all others. After a re-argument of the cause, I am satisfied that my first opinion was incorrect.

The common use of this kind of security is of recent origin, and they have, therefore, not been made the subject of judicial decision, as far as I can discover. An examination into their specific character, shows that, although differing in form from a promissory note, yet they have all of its important incidents. Each contains a promise by one person to pay another person, absolutely and uncondi-tionally, a certain sum of money, at a time specified therein. The rules of law, in reference to all securities, ought to be applied according to the nature of the security, and not be influenced by the name by which the paper is commonly

known. I have, therefore, no longer any doubt that these certificates of deposit must be, as far as negotiability is concerned, placed upon the same footing as promissory notes. These latter were, I think, very clearly negotiable at common law, independent of the Statute of Anne; but if there are any doubts as to that position, they are solved by the provisions of our statute. (See Compiled Laws, 146.)

This brings us to the main question raised upon the record, whether the maker of a negotiable security has a right to require indemnity against all future claims, when it is alleged that the paper has been lost or destroyed.

Upon this point the American authorities are conflicting. Some hold that, upon proof of the destruction of the paper, no indemnity ought to be demanded. In England, a suit at common law cannot be brought, but a resort must be had to the Court of Chancery, which always decrees indemnity. The same rule as to indemnity prevails in France, except in the case of paper unnegotiable.

It is undeniable that, upon the payment of a note or bill, the maker or acceptor has a right to its possession, as a voucher of its payment. Can this right be taken away without an equivalent? It is said, that proof of its destruction is a sufficient assurance that it can never afterwards appear. But, when we reflect upon the uncertainty and fallibility of all human testimony, it looks unjust [41] to force the risk of its reappearance upon a *party totally innocent of fault, and who has not bargained with a view to any mischance which may, in the future, result to his injury. I think that there never can be, to him, that assurance of the loss or destruction of the paper, as should force him, against his will, to take the peril, either of defending an action thereafter, or of repaying the amount. The negligence or misfortune of the holder ought not to give him the right of casting such a burden upon the maker.

In examining and comparing the numerous conflicting authorities and the reasoning which they adduce, I am satisfied that the best rule is, to require the indemnity, in all

cases, whether a bill or note be lost, or destroyed. It may, in some cases, operate as a great inconvenience, and may even produce hardship, but so does nearly every mischance or misfortune.

We only determine to let it be visited where it is properly due. A different rule would produce equal or more hardship and inconvenience, where it is the least merited.

Judgment reversed, and cause remanded.